IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE MARVEL, Individually and as | : | |
| Executrix for the Estate of David Marvel, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DELAWARE COUNTY, | : | NO.  07-5054 |
| WALTER R. OMLOR, JR. and | : | |
| PAUL M. MICUN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER S.J.                                                                                                April 10, 2008

Currently pending before the Court is the Motion to Dismiss of Defendants Delaware County, Walter R. Omlor, Jr. and Paul M. Micun and the Response of Plaintiff Grace Marvel, individually and on behalf of the estate of her husband David Marvel.  For the following reasons, the Court denies the Motion in its entirety.

**I. FACTUAL AND PROCEDURAL HISTORY**

According to the allegations set forth in the Complaint, David Marvel was issued citations, on May 10, 2006, for possession of an open container of alcohol and other related offenses in Ridley Creek State Park. (Compl. ¶ 8.) In connection with those citations, Marvel, who was fifty-nine years old at the time, applied for acceptance into Defendant Delaware County's Accelerated Rehabilitative Disposition ("ARD") Program.[1] (Id. ¶ 9.)  The application

---

1.  "ARD is a pre-trial diversionary program, the purpose of which is to attempt to rehabilitate the defendant without resort to a trial and ensuing conviction." Gilles v. Davis, 427 F.3d 197, 219 (3d Cir. 2005) (internal
(continued...)

did not inquire into Marvel's existing medical conditions or medications. (Id.) At the time of his application, Marvel was employed with Mittal Steel, working full-time in an air-conditioned crane. (Id.)

In fulfillment of Marvel's ARD mandated community service, Defendant Walter R. Omlor, Jr., the Community Corrections Department Director, assigned him a job assisting paid contractors with the construction of a firing range at Defendant Delaware County's Emergency Training Center. (Id. ¶¶ 10-11.) Marvel reported for duty at the Emergency Training Center on July 31, 2007, and worked from approximately 7:00 a.m. to 4:00 p.m. (Id. ¶ 12.) The following day he returned to the Emergency Training Center at 7:00 a.m. (Id. ¶ 13.) The National Weather Service had issued an Excessive Heat Warning for Delaware County on July 31, 2006, to remain in effect until August 3, 2006,[2] the day that Marvel was to complete his community service. (Id. ¶ 13.)

On August 1, 2006, Marvel assisted with the construction of a two story scaffold. (Id. ¶ 15.) Despite the weather conditions, the community service workers were only provided with one water cooler, and ran out of water at some point during the day. (Id. ¶ 14.) Prior to that date, Marvel had never experienced heart related symptoms, was never diagnosed with coronary artery disease or any other heart condition, and had never taken heart medication. (Id. ¶ 12.) At approximately 11:00 a.m., however, while unloading cement cinderblocks in the direct sunlight, Marvel began to exhibit signs of illness. (Id. ¶¶ 16-17.) Although he was not scheduled for lunch for another fifteen to twenty minutes, he chose to break early at the suggestion of a co-

---

1. (...continued)
quotations omitted).

2. The Amended Complaint states that the Excessive Heat Warning was scheduled to last until August 3, 2007. The Court assumes that this is merely a typographical error.

2

worker. (Id. ¶ 18.) He descended the scaffold and was walking on the ground level of the partially constructed building when he collapsed onto the floor, sweating and gasping for air. (Id.)

Immediately, one of the community service workers called his wife, a nurse at Mercy Fitzgerald Hospital, for advice on how to assist Marvel. (Id. ¶ 19.) Based on her suggestion, the workers soaked their shirts with water and placed them on his body. (Id. ¶ 20.) Defendant Paul Micun, the Community Corrections Department Supervisor, who was located in a nearby air-conditioned building, called 911 to report a heat emergency. (Id. ¶ 21.) The Collingdale Fire Company ambulance arrived at approximately 11:22 a.m. and transported Marvel to Mercy Fitzgerald Hospital, where he was pronounced dead of a cardiac arrest at approximately 11:50 a.m. (Id. ¶ 22.)

Defendant Micun instructed the remaining community service workers to take an hour lunch and return to work. (Id. ¶ 23.) At 11:45 a.m., the paid contractors went home due to the oppressive weather conditions. (Id. ¶ 24.) Upon learning of Marvel's death, the community service workers also informed Defendant Micun that they were not going to continue working that day. (Id. ¶ 26.) Micun instructed them to return later in the week and continue performing the same heavy labor in the ongoing excessive heat. (Id. ¶ 28.)

Following Marvel's death, his wife, Plaintiff Grace Marvel, contacted Defendant Omlor regarding the incident. (Id. ¶ 29.) In addition, Marvel's attorney contacted Defendant Delaware County with respect to (1) its absence of a policy or screening process for individuals performing community service with regard to issues such as medical and physical conditions, age and/or weather conditions, and (2) the unlawfully oppressive/punitive nature of community service for ARD applicants. (Id.) Defendants were also aware of a similar incident in February,

2006, when a sixty-year old man reported to the Emergency Training Center and provided Defendants with two doctors' notes stating that he suffered from chronic obstructive pulmonary disease and degenerative knee disease, which restricted his ability to walk long distances and perform any physical activity.  (Id. ¶ 45.)  Defendants nonetheless required him to perform outside community service work along with all of the other ARD applicants.  (Id. ¶ 46.)  The worker was subsequently hospitalized with pneumonia in one of his lungs.  (Id. ¶ 47.)  Despite this incident, as well as the verbal and written complaints by Marvel's family and attorney, Defendants, to date, continue to operate the ARD Program without any policy or procedure in place for either medically screening applicants or taking into account oppressive weather conditions.  (Id.. ¶ 30.)

    Plaintiff Grace Marvel, individually and as executrix for the estate of David Marvel, initiated this civil action on November 30, 2007.  In her Complaint, she brings several constitutional claims under 42 U.S.C. § 1983.  Count I alleges that Defendants Omlor and Micun, acting under color of state authority, deprived Marvel of his constitutional rights under the Fourteenth Amendment, including his liberty interests in (1) bodily safety while performing community service; (2) freedom from deprivation of life without due process of law; and (3) an expectation of minimal standards for the safety, health, well-being and security of community service workers.  (Id. ¶¶ 39-43.)  In Count II of the Complaint, Plaintiff asserts that all Defendants violated Marvel's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments by (1) failing to develop or implement policies or procedures to screen ARD applicants for medical or physical conditions or medications that could adversely affect their ability to perform community service; (2) failing to develop adequate polices and procedures for assigning older applicants for the ARD Program less physically strenuous community service work; (3) failing to

develop adequate policies or procedures for having ARD workers avoid extreme weather conditions; (4) failing to implement policies and procedures for protecting older community service workers; (5) failing to abide by the Excessive Heat Warning issued by the National Weather Service of Delaware County; (6) failing to properly train, supervise and/or monitor Marvel during his community service; (7) failing to provide Marvel with sufficient water; (8) precluding community service workers from using their cell phones to call family members to bring them water during the day; (9) failing to provide Marvel with sufficient protection from direct sunlight; (10) failing to warn Marvel of the Excessive Heat Warning and of the dangers of performing heavy manual labor in oppressive weather conditions; (11) failing to postpone Marvel's community service work until a later date when conditions were not oppressive; (12) requiring Marvel to perform heavy manual labor that it had already contracted with a construction company to provide; (13) failing to provide adequate and timely medical assistance to Marvel; (14) requiring the remaining community service workers to return to heavy labor in oppressive weather shortly after witnessing Marvel's death and despite the ongoing Excessive Heat Warning; (15) failing to implement policies or procedures for medically screening ARD workers following Marvel's death; (16) failing to develop or implement adequate policies or procedures for avoiding extreme weather conditions following Marvel's death; and (17) failing to develop or implement policies or procedures for protecting older community service workers following Marvel's death.  (Id. ¶¶ 44-50.)

On December 26, 2007, Defendants filed the pending Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff responds that the Complaint adequately states a claim upon which relief can be granted.

**II.  STANDARD OF REVIEW**

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  The question before the court is not whether the plaintiff will ultimately prevail.  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).  Rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  When considering such a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The court, however, will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**III.  DISCUSSION**

    **A.  Count I - State Created Danger**

Defendants first move to dismiss Count I of Plaintiff's Complaint, which alleges, under 42 U.S.C. § 1983, violations of Plaintiff's Fourteenth Amendment liberty interests.  In their brief, Defendants assert that Plaintiff has not met the elements of the "state-created danger" doctrine necessary to create a cognizable § 1983 claim.

"Section 1983 'is not a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694, n.3 (1979)).  In order to state a cause of action under section 1983, a plaintiff must demonstrate both that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

"Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008).  The United States Supreme Court has expressly held that the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens. DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 195-96, 109 S. Ct. 998, 1003 (1989).  The state-created danger theory, however, operates as an exception to that general rule and requires plaintiffs to meet a four-part test in order to impose liability on the state actors: "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." Phillips, 515 F.3d at 235 (citing Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006).  To prevail on such a claim, a plaintiff must establish all four of the foregoing essential elements. Magwood v. French, 478 F. Supp. 2d 821, 828 (W.D. Pa. 2007).

1.      **Foreseeability**

The first element requires that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 908 (3d Cir. 1997). "A harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm." Gremo v. Karlin, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005). Notably, in order to establish foreseeability, the Third Circuit has not required a plaintiff to allege a past history to show a defendant's knowledge. Phillips, 515 F.3d at 230. Rather, it has observed that "these types of cases often come from unexpected or impulsive actions which ultimately cause serious harm." Id.; see Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1966) (holding that where police stopped husband and woman for intoxication, husband went home to take care of son, police left woman to her own means to get home and woman subsequently suffered hypothermia, "a reasonable jury could find that the harm likely to befall [woman] if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable.")

Given this standard, the Court finds that the allegations of the Complaint, taken as true, suffice to establish foreseeability. The National Weather Service had issued an Excessive Heat Warning for Delaware County for August 1, 2006, and the Temperature-Humidity Index was 115 to 117 degrees Fahrenheit in the sun. (Compl. ¶¶ 13, 16.) Nevertheless, Defendants ordered Marvel, a fifty-nine year old man, to perform his community service by unloading cement cinderblocks from a pallet in direct sunlight. (Id. ¶ 16.) Regardless of whether or not the County was aware of any medical condition that Marvel may have had, it could have reasonably

foreseen that physical labor by an older man during an Excessive Heat Warning could lead to injury or death.

Defendants' contrary arguments do not persuade the Court otherwise. Defendants first contend that Marvel had worked the day before in the hot weather without complaint or incident. However, the mere fact that Marvel was fortunate enough to survive one day does not exonerate Defendant from otherwise foreseeable consequences. Defendants also argue that, under Plaintiff's theory, they would be obligated to suspend all outside work for employees or community service workers in "normal" August "hot weather" for fear that someone might be fatally stricken. (Defs. Reply Br. 6.) According to the allegations of Plaintiff's Complaint, however, the National Weather Service had issued an Excessive Heat Warning; it was not simply a normal, hot August day. As such, the Court finds the first element to have been adequately pled.

### 2. Actions that Shock the Conscience

Next, the Court turns to the question of whether Plaintiff has properly alleged that Defendants acted with a degree of culpability that "shocks the conscience." Bright, 443 F.3d at 281. The Third Circuit has held that, in making this determination, there is a continuum upon which the degree of culpability required to establish such a claim must be measured, relating to the circumstances of each case. Sanford v. Stiles, 456 F.3d 298, 309-10 (3d Cir. 2006). Thus, a distinction exists between urgent situations and situations in which state actors have the time and "luxury of proceeding in a deliberate manner." Rivas v. City of Passaic, 365 F.3d 181, 195 (3d Cir. 2004). When a state actor has the opportunity to make a careful and unhurried judgment, deliberate indifference on the part of the state will be sufficient to shock the conscience. See County of Sacramento v. Lewis, 523 U.S. 833, 850 n.10, 118 S. Ct. 1708, 1718 n.10 (1998);

Schieber v. City of Phil., 320 F.3d 409, 418 (3d Cir. 2003).  Generally, in a case involving a claim of municipal liability, the standard for "shocks the conscience" is deliberate indifference. Lewis, 523 U.S. at 850 & n. 10; Kaucher v. County of Bucks, 455 F.3d 418, 426-27 n.4 (3d Cir. 2006). Deliberate indifference remains "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm's v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997); Kaucher, 455 F.3d at 427 n.4.

      The allegations of the Complaint and the reasonable inferences therefrom suffice to suggest that the Defendants not only foresaw the danger of harm their actions presented, but were deliberately indifferent to the effect those actions would have on Marvel.  Notwithstanding Defendants' bald claims to the contrary, nothing in the alleged facts evidences a "hyper-pressurized situation."  Scheiber, 320 F.3d at 422.  Defendants, well aware of the Excessive Heat Warning, could have engaged in "relaxed deliberation" as to how to handle its community service workers scheduled to perform heavy labor outside.  Sanford, 456 F.3d at 308.  Yet, they chose to have it's the workers report to outside duty.  That seeming deliberate indifference was compounded by the allegations that (1) the community service workers were only provided with one water cooler which ran out during the day (Compl. ¶ 14); (2) Defendants did not allow community service workers to use their cell phones to call family members so that they could bring them water (Compl. ¶ 49(I)); and (3) Defendants failed to provide the workers with sufficient protection from direct sunlight, such as a tent or canopy (Compl. ¶ 49(j).)  To the extent Defendants dispute the truthfulness of any of these allegations, such arguments are misplaced on a motion to dismiss.

### 3. The Relationship Between The State and Plaintiff

The third element of the state-created danger doctrine, the "foreseeable plaintiff" factor, "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 912 (3d Cir. 1997) (quoting Kneipp, 95 F.3d at 1209 n.22). "Although the plaintiff is not a foreseeable victim if the state actors create a threat to the general population only, the threat does not have to be against a specific individual." Gremo v. Karlin, 363 F. Supp. 2d 771, 789 (E.D. Pa. 2005). Rather, there is a relationship between the state and the plaintiff under a state-created danger theory "if the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." Morse, 132 F.3d at 913; see also Rivas, 365 F.3d at 197. A distinction exists "between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." Phillips, 515 F.3d at 239. Nonetheless, the inquiry is unavoidably fact specific for each individual case. Id.

In the case at bar, Marvel was not merely a member of the public large – he was a community service worker assigned to perform work under the ARD program. Marvel entered into the ARD program in lieu of a trial and conviction and, by the program's express terms, community service was mandated. When Defendants assigned him to heavy labor and required him to report on a day on which an Excessive Heat Warning was in effect, it subjected him, as a member of a discrete class of persons, to potential harm.

In an attempt to respond, Defendants argue that "County Defendants did not appear at Mr. Marvel's home on the morning of August 1st, take him into custody and 'force' him

to do anything. Presumably, had David Marvel gotten up on the morning of August 1st and advised the community service coordinators that he was ill or that in his opinion it was too hot for him to work, there would have been little or nothing the County Defendants could have done about it except to advise that he would have to make up the time on another day." (Defs' Reply Br. 4-5.) Aside from the fact that this argument asks the Court to make factual findings with no evidentiary basis, it misconstrues the nature of this element which does not require Plaintiff to allege that he was in custody – only that he was a foreseeable plaintiff in the tort sense. As the Complaint sufficiently alleges this element, the Court deems it satisfied.[3]

### 4. Affirmative Act

Under the final element of a state-created danger claim, "[l]iability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282 (quoting D.R. by LR. v. Middle Bucks Area Voc. Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992) (emphasis in original)). In other words, a plaintiff must "allege an affirmative action, rather than inaction or omission." Phillips, 515 F.3d at 236. "[F]ailure to act cannot form the basis of a valid § 1983 claim." Bennett ex. rel

---

3. Defendants take specific exception to Plaintiff's claim that Defendants provided inadequate medical attention and argue that it does not rise to the level of a constitutional violation since Marvel was not in custody. In Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2001), however, the Third Circuit, applying the state created danger doctrine, declined to grant summary judgment in favor of a group of police officers and EMTs who responded to an emergency in an apartment where a resident was experiencing a seizure. Id. at 184. The seizure victim, after being restrained, died shortly after the police arrived. Id. at 185-86. The court found that the plaintiff adequately maintained a section 1983 claim under the state created danger theory, due to the EMTs failure to render adequate medical assistance and failure to inform police that, as a seizure victim, the plaintiff should not be restrained despite his seemingly threatening behavior. Id. at 196. No element of custody was necessary.
    In this case, the Complaint does not aver that medical personnel acted improperly, but rather that it was Defendants who actually created the dangerous condition that caused Marvel's medical emergency and then failed to promptly treat him. Under Rivas, such an allegation survives a motion to dismiss.

Irvine v. City of Philadelphia, 499 F.3d 281, 288 (3d Cir. 2007).  Once an affirmative action is alleged, "the fourth element is satisfied where the state's action was the 'but for cause' of the danger faced by the plaintiff."  Kaucher, 455 F.3d at 432.

Again, the Court finds that the Complaint survives a motion to dismiss.  Plaintiff avers that, without ever screening Marvel for physical and/or other medical conditions that would limit his ability to do heavy labor, the County required him to work at a construction site in an Excessive Heat Warning in order to satisfy his ARD requirements.  Certainly, such affirmative actions, if true, would have been the but for cause of Marvel's death from heat-related cardiac failure.  Defendants' argument that the County "did not 'create' the hot weather" is unavailing.  (Defs' Reply Br. 8.)  By assigning the fifty-nine year old Marvel to heavy labor community service in the excessive heat, Delaware County enhanced his risk of harm.  Likewise, the Court finds no merit to Defendants' argument that "[t]here is no documentation establishing that David Marvel died of cardiac failure, or assuming that he did die of cardiac failure that the cardiac failure was caused by working in hot weather."  (Id.)  Plaintiff pled that the heat caused his death; she need not come forward with any additional evidentiary support on a motion to dismiss.

In sum, given the allegations of the Complaint, together with their reasonable inferences, Plaintiff has adequately pled a prima facie case of state-created danger under section 1983.  Whether such a claim will ultimately survive the evidentiary burdens of summary judgment is, for the time being, of no moment.[4]

---

4.  Defendants argue that this case is nothing more than a negligence action, which is foreclosed by Pennsylvania's Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. § 9541, et seq.  It is true that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."  County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 1717-18 (1998).  Indeed, "the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the states.'"  Id. (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160-61 (1976).).  While
(continued...)

     B.     <u>Count II - The *Monell* Claim</u>

The second count of Plaintiff's Complaint asserts, in part, that Defendant County of Delaware failed to develop or implement policies or procedures to screen ARD applicants for medical or physical conditions or medications that could adversely affect their ability to perform community service.   Defendants now argue that this claim must be dismissed.

In the seminal case of <u>Monell v. Dept. of Soc. Serv.</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978), the United States Supreme Court confirmed that "Congress did intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Id</u>. at 690-91, 98 S. Ct. 2035-36.  To establish section 1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." <u>Id.</u> at 690-691.  The Third Circuit refined these definitions and explained that policy or custom may be established (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict" or (2) through a "course of  conduct . . . when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).

---

4.  (...continued)
 further development of this case may, in fact, expose it as a simple tort action, the allegations of the Complaint
 sufficiently plead a section 1983 claim.

Beyond identification of a policy or customary failure to act, establishment of section 1983 municipal liability requires a showing of causation. "[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality." Board of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). Rather, the plaintiff must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  Id.; see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990) (plaintiff carries burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation challenged).

Yet again, the Complaint survives Defendants' motion to dismiss.  As noted above, Plaintiff asserts that Defendant County of Delaware failed to develop or implement policies or procedures to screen ARD applicants for medical or physical conditions or medications that could adversely affect their ability to perform community service.  In support of this claim, Plaintiff asserts that the County had prior experience, in February 2006, with a sixty-year old man who was hospitalized with pneumonia as a result of being required to perform outdoor community service work with a disability.[5]  (Compl. ¶¶ 45-47.)  Despite this knowledge, the County never changed its policy with regard to screening ARD applicants for potential medical conditions. Plaintiff now asserts that, as a direct result, Marvel did not undergo any medical screening and, consequently, was required to perform heavy labor in oppressive weather conditions.  In turn, he suffered fatal injuries during his community service work.  Defendants' contrary arguments again attempt to create factual disputes by improperly asserting that Plaintiff has produced no evidence

---

5.  Defendants argue that Plaintiff has no standing to bring a claim on behalf of this unidentified sixty-year old man. A plain reading of the Complaint, however, reveals that Plaintiff raised this incident only to demonstrate that Defendants had notice that its failure to medically screen ARD applicants could have dire consequences.

to substantiate this claim. Taking the allegations as true, however, the Complaint is sufficient to withstand a motion to dismiss.[6]

### C. Claims Against the Individual Defendants

Finally, Defendants contend that the claims against Defendants Omlor and Micun should be dismissed under the judicial and/or quasi-judicial immunity doctrine. "Quasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge." Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir. 2003). As noted by the Third Circuit, "[r]egardless of his job title, if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office." Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir. 2006). "While it is well-settled that quasi-judicial immunity may apply to those who "perform functions closely associated with the judicial process, . . . such as court clerks and prothonotaries, . . . the rule only applies when the court employee is performing a function directly related to the court's decision-making activities . . . or a function at the judge's direction" McKnight v. Baker, 415 F. Supp. 2d 559, 563 (E.D. Pa. 2006), aff'd, 244 Fed Appx. 442 (3d Cir. 2007) (internal quotations omitted).

---

6. Although Defendants attempt to analogize the Supreme Court case of Collins v. City of Harker Heights, 503 U.S. 115, 112 S. Ct. 1061 (1992), that case is distinguishable. In that matter, a city worker died by asphyxiation after going into a manhole to unstop a sewer line. Id. at 117. The United States Supreme Court found that a government's failure to warn its employees of known dangers or to provide a safe working environment failed to state a violation of substantive due process. Id. at 126-28.
    This case, to the contrary, involves an allegation that Defendants, acting with deliberate indifference despite known dangers, failed to screen its community service workers for medical conditions and then placed them in hazardous work environments. On their face, these allegations go beyond a mere tort claim, alleging conscious-shocking behavior. While the dictates of Collins may become more meaningful upon further factual development of this case, they are inapposite at this juncture.

Defendants now assert that Defendants Omlor and Micun were acting on behalf of the court's judicial process when they supervised Marvel's community service work. Specifically, they claim to have been acting to enforce a court determination that Marvel could participate in the ARD program, similar to the function of a probation officer. Nothing in the facts or reasonable inferences of the Complaint, however, supports such a finding. Defendant Omlor was Director of Delaware County's Community Corrections Department and was responsible for assigning jobs for community service workers to perform as party of the County's ARD Program. (Compl. ¶ 2.) Defendant Micun was the supervisor of the community service workers at the Delaware County Emergency Training Center. (Id. ¶ 3.) By Defendants' own account, these individuals were responsible for executing a court judgment. Nothing suggests that they were performing functions closely associated with or directly related to the court's decision-making activities, functioning at a judge's discretion or acting like a judge. The Court thus declines to grant Defendants Omlor and Micun quasi-judicial immunity.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that the Complaint in the case at bar adequately states a claim upon which relief can be granted on both counts. Accordingly, we deny the motion to dismiss in its entirety. An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE MARVEL, Individually and as Executrix for the Estate of David Marvel, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| DELAWARE COUNTY, WALTER R. OMLOR, JR. and PAUL M. MICUN, | : : : : | NO. 07-5054 |
| Defendants. | : | |

## ORDER

AND NOW, this *10th* day of *April*, 2008, upon consideration of the Motion to Dismiss of Defendants Delaware County, Walter R. Omlor, Jr. and Paul Micun (Doc. No. 5), Plaintiff's Response thereto (Doc. No. 6), Defendants' Reply Brief in further support of their motion (Doc. No. 7) and Plaintiff's Sur-reply Brief (Doc. No. 8), it is hereby **ORDERED** that Defendants' Motion is **DENIED.**

                                        BY THE COURT:

                                        *s/ Ronald L. Buckwalter*
                                        RONALD L. BUCKWALTER, S.J.